FRANK M. HOOPER *vs.* BAY STATE STREET RAILWAY COMPANY.

Essex.     November 6, 1913. — June 17, 1914.

Present: RUGG, C. J., HAMMMOND, LORING, BRALEY, SHELDON, DE COURCY,
& CROSBY, JJ.

*Negligence,* Street railway.  *Evidence,* Contradictory statements of witness.

If, when a passenger is alighting from the front vestibule of a closed street railway
car while it is in motion, a raincoat which he is wearing becomes caught in the
door so that he is in danger of being injured, and this fact is called to the motor-
man's attention, it is the motorman's duty to stop the car in order to prevent
injury to the passenger.

At the trial of an action against a street railway company for personal injuries
alleged to have been caused when the plaintiff's raincoat caught in the front
door of the vestibule of a closed car of the defendant as he was alighting
from the car when it was in motion, so that he was dragged by the car and
run over, the plaintiff testified in substance that he ran beside the car before
he fell about one hundred feet, shouting continuously.  No person testified
that he had heard the continuous shouting.  A witness in a nearby building
testified that he heard one "holler."  A passenger in the front vestibule, who
was called as a witness by the plaintiff, was not questioned on the point.  An-
other passenger in that vestibule and the motorman both testified that they
heard no shouting.  *Held,* that there was no evidence to warrant a finding that
the motorman heard or ought to have heard the shouting.

In an action against a street railway company for personal injuries caused by the
plaintiff's raincoat being caught in the door of the front vestibule of a closed
car of the defendant as he was alighting when the car was going about four
miles an hour, causing him to fall, be dragged and run over when the speed
of the car was increased, if it appears that, as the plaintiff jumped from the
car a passenger standing beside the motorman told him in a sharp command-
ing voice and vigorous language that he had better stop the car to see where
"that fellow went to," and that the motorman merely shut off the power and
applied the brake, it is not evidence of negligence on his part that he did not
also reverse the power, which he knew would have stopped the car sooner.

─────────────────────

* *Wait,* J.

Where, in an action against a street railway company for personal injuries alleged to have been caused by negligence of a motorman in not stopping a closed car of the defendant from which the plaintiff was alighting while it was in motion when a raincoat which the plaintiff was wearing caught in the door of the vestibule, there is evidence that, when the plaintiff alighted, the car was going only four miles an hour, but that almost immediately, and while the plaintiff was running beside it, its speed was increased until he could no longer keep his footing, and he fell, was dragged and was run over, if a witness for the plaintiff who was in the front vestibule testifies in substance that, when the plaintiff jumped, he, the witness, spoke to the motorman in a "kind o' sharp, quick and commanding tone of voice," saying, "You better a damn sight stop the car as soon as you can to see where in hell that fellow went to," and that thereafter the car ran "about sixty-five paces rather short" before it came to a stop, although in cross-examination the same witness states that the car went only a car length after he spoke to the motorman, the jury are warranted in finding that after the witness spoke to the motorman the car continued for one hundred and seventy-five feet, and that the motorman was negligent.

TORT for personal injuries received when the plaintiff's raincoat was caught in the door of the front vestibule of a closed electric street car of the defendant as he was in the act of leaving the car while it was in motion, causing him to be dragged and to be run over by the car. Writ dated November 4, 1911.

In the Superior Court the case was tried before *Ratigan*, J. The material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1913, before *Rugg*, C. J., *Morton, Loring, Braley, & De Courcy*, JJ., and afterwards was submitted on briefs to all the justices then constituting the court.

*J. Lowell & L. Hill*, for the plaintiff.

*M. L. Sullivan*, (*J. J. Ronan* with him,) for the defendant.

LORING, J.   The facts in this action were substantially as follows: The plaintiff undertook to alight from one of the defendant's cars without notifying the conductor or motorman that he wished to do so.   He had been riding on the front platform, standing behind the motorman and between two other passengers, Glass and Davis by name.   Glass was on his left and Davis on his right. The car had come down Lafayette Street in the city of Salem, and slowed down to go round a curve into New Derby Street, which runs nearly at a right angle.   As the car came to the curve

and before it entered upon it (as the plaintiff testified), or when it reached the centre of the curve (as one of his witnesses testified), the plaintiff, thinking that it was going to stop, told Davis that he was going to get off. Thereupon Davis stepped forward beside the motorman, the plaintiff opened the door of the vestibule, swung the door to and stepped off. He had on a raincoat which was buttoned up. As he stepped off, the coat caught "in the door which had become closed." He ran along with the car trying to free his coat and "shouting continuously at the motorman." When the car had "made" the curve it was going at the rate of some four miles an hour, and then the motorman returned to a faster speed. When the car returned to the faster speed, the plaintiff, being unable to keep up with it, fell and his leg was caught under the rear truck. The plaintiff's counsel assumed that the car was twenty-six feet long, as testified to by one of the defendant's witnesses. The plaintiff testified that he ran two car lengths (that is, fifty-two feet) before he shouted, four car lengths (that is, one hundred and four feet) while he was "shouting," and that he was dragged two more (that is, fifty-two feet) after he fell. The testimony given by other witnesses called by the plaintiff did not entirely agree on the distances. But the distances given by the plaintiff were as favorable as those given by the other witnesses.

The first ground on which the plaintiff contends that the jury were warranted in finding negligence on the part of the defendant is that from the fact that Davis stepped forward beside the motorman (at the time the plaintiff passed behind Davis to alight), the motorman ought to have known that the plaintiff was intending to alight although he had not taken the trouble to give him notice of his intention to do so. We doubt whether that is so, because it is the duty of a motorman to concentrate his attention on the street before him in order to avoid collisions with automobiles, wagons and foot passengers, who have equal rights in it. *Kiley* v. *Boston Elevated Railway*, 207 Mass. 542. *Brightman* v. *Union Street Railway*, 216 Mass. 152. But we do not find it necessary to come to a decision on that fact because it appears that the company had regular stopping places marked by white posts, and the place where the plaintiff undertook to alight was not at a stopping place.

Of course it would have been the motorman's duty to come to

a stop if he had known of the danger that the plaintiff was in by reason of the door having shut to on his coat. The plaintiff has contended that the jury were warranted in finding negligence on the part of the motorman in not coming to a stop before he did, because on the evidence they could have found that he did hear or ought to have heard the "continuous shouting" testified to by the plaintiff, while he was running by the car for one hundred feet. But no witness was produced who heard this continuous shouting. And among the witnesses who testified were the plaintiff's fellow passengers on the front platform, Glass and Davis. Davis was put on the stand by the plaintiff and was not questioned on this point. Glass, called by the defendant, testified that he did not hear it; and so did the motorman. The one "holler" testified to by a coachman standing inside the door of a livery stable could not have been found to refer to the continuous shouting testified to by the plaintiff. From the coachman's testimony taken as a whole it is plain that the one "holler" testified to by him was the cry (testified to by other witnesses) given by the plaintiff when his leg was struck by the rear truck. Under these circumstances any shouting by the plaintiff must be taken to have been drowned by the noise of the operation of the car and other noises of the street, and a finding that the motorman did hear or ought to have heard it was not warranted.

We are of opinion that a finding of negligence was not warranted by the fact that, when spoken to by Davis, the motorman, in place of applying the reverse power, shut off the power and applied the brakes.

But we are of opinion that the testimony given by Davis on his direct examination entitled the plaintiff to go to the jury. On his direct examination Davis testified that the plaintiff "started to jump" "just as the car got about in the dead centre of the curve" at the junction of Lafayette and New Derby Streets. That he "then" spoke to the motorman and told him to stop "as quick as he could to see where that fellow went to." "I said, 'You better a damn sight stop the car as soon as you can to see where in hell that fellow went to'" "[I] said this in a 'kind o' sharp, quick and commanding' tone of voice." But (so this witness testified) the car went "about sixty-five paces 'rather short,'" before it came to a stop. If a "rather short" pace be taken to

be two and three quarters feet, the jury were warranted in finding that the car went one hundred and seventy-five feet after Davis spoke to the motorman. It is true that on cross-examination this same witness testified that "the car went a length in all after the witness spoke to the motorman." The two statements are contradictory, and it was for the jury to decide between them. *Tierney* v. *Boston Elevated Railway,* 216 Mass. 283. If the jury believed the testimony given by Davis on his direct examination, they were warranted in finding that the motorman in effect had been told that the "fellow" who had undertaken to alight was in danger; that the situation was urgent and required the immediate stopping of the car. If this was so, they were warranted in finding that the motorman was negligent in not bringing the car to a stop before he did, that is to say, before it had gone one hundred and seventy-five feet after he thus was spoken to by Davis.

*Exceptions sustained.*